SHERMAN BURRUS, d/b/a Metropolitan Printers, Plaintiff-Appellee, *v.* ITEK CORPORATION, Defendant-Appellant.

Third District   No. 76-261

Opinion filed March 11, 1977.

352

Robert Metzler, of Clevenger, Metzler & Christie, of Pekin, for appellant.

Carl Reardon, of Moehle, Reardon, Smith & Day, of East Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

After bench trial in the Circuit Court of Tazewell County plaintiff Sherman Burrus, d/b/a Metropolitan Printers, was awarded judgment and damages against the defendant Itek Corporation for breach of an implied warranty arising from the sale of a printing press. From that judgment and award of damages this appeal ensued.

The plaintiff is a job printer whose business is located in East Peoria under the business name of Metropolitan Printers. He has been in business since 1961 and has been concerned primarily with printing letterheads, envelopes, brochures and cards. In April of 1970 the plaintiff purchased a printing press from the defendant, the price of which was $5,068.88, but as the result of certain financing ultimately resulted in an expenditure of $7,006.08.

The plaintiff considered purchasing the press for a period of approximately two years prior to the actual purchase and then only after he had made a visit to Bloomington to personally watch the operation of an identical press. A representative of the defendant company, Mr. Nessel, assured the plaintiff that for the kind and quality of printing he was doing the press in question was the one which would satisfy and fulfill his needs. It was represented to be less time-consuming, cheaper to operate and eliminated the need for certain negatives.

From the record it is clear that from the time the press was delivered to the plaintiff's place of business problems and difficulties were encountered almost continuously. Representatives of the defendant worked for several days in an effort to install the press and to get it operating properly. It was the testimony of the plaintiff that the press never did operate properly. His specific complaints were that it did not feed properly, it had paper jam-ups, it failed to register properly (which is a process where one symbol is printed on top of another identical symbol without any visible overlap on the printed surface), that the machine streaked or smeared the printed surface, that it was not timed properly, produced crooked printing, was slow in printing and problems with loose or defective parts were ever present.

It is evident from the testimony adduced during the trial of this case that representatives of the defendant company, the plaintiff and his employees spent many hours in an effort to correct the deficiencies of the press and to get it to operate properly. One witness, a former employee of the defendant, testified that out of an eight-hour working day the press operated properly not more than two hours.

It is apparent that sometime within 60 days after the plaintiff purchased the press he expressed a desire that it be replaced. Mr. Nessel, a salesman

for the defendant company, recommended to his employer that it be replaced but his recommendation was not accepted.

The defense of the defendant was primarily based upon the proposition that the operators of the press in question were not skilled operators as to this particular piece of equipment and that the press did not receive proper maintenance. The primary operators were the plaintiff and a Mr. Wiese, who was also an instructor in the printing department at Illinois Central College.

In this appeal the defendant raises two issues, the first being whether the plaintiff sustained his burden of proof that an implied warranty existed in regard to the press and whether such warranty was breached. The second issue is whether the court properly assessed the correct amount of damages that plaintiff was entitled to recover.

As to the first issue we direct our attention to section 2—316 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—314), which provides:

"(1) Unless excluded or modified (Section 2—316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * * "

This statutory provision contains three elements which had to be present to support the existence of an implied warranty. First, we must have present "goods" which fall within the purview of the statute; secondly, there must be a contract for the sale of the goods, and the seller must be a merchant engaged in selling such goods.

■■ Turning to our Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—105) we find the following definition of goods:

"(1) 'Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale * * * ."

It is clear from the record that the press purchased by the plaintiff falls within this definition; it was movable and was in fact moved, and it was identified as being the press displayed in a defendant's brochure and like the one witnessed by the plaintiff in Bloomington.

■■ A contract for sale includes both a present sale of goods and a contract to sell goods at a future time. A sale consists in the passing of title from the seller to the buyer for a price. (See Ill. Rev. Stat. 1975, ch. 26, par. 2—106(1).) In the instant case the plaintiff offered to purchase a press, paid the necessary consideration, and received delivery of the machine. In short, the statutory requisites for a "contract for sale" were present.

■■ A merchant is a person who deals in goods of the kind or otherwise by his occupation holds himself out as having the knowledge or skill peculiar to the practices of the goods involved in the transaction. (See

Ill. Rev. Stat. 1975, ch. 26, par. 2—104.) We need not analyze the evidence and set forth a recital of the same in order to determine that the defendant corporation is a merchant. It is obvious that the defendant is a merchant since its business is to sell printing presses.

Finding no evidence of any exclusions or modifications we can only conclude that a warranty of merchantability was implied in respect to the printing press purchased by the plaintiff.

Having found that an implied warranty of merchantability existed we are next confronted with the question as to whether or not the plaintiff proved before the trial court that the same was breached.

We are of the opinion that the plaintiff did make proof of a breach of implied warranty. Again referring to our Commercial Code and in particular to section 3—314(2)(c) (Ill. Rev. Stat. 1975, ch. 26, par. 2—314(2)(c)) we find the following pertinent language:

"(2) Goods to be merchantable must be at least such as
 * * *

(c) are fit for the ordinary purposes for which such goods are used; * * *."

The plaintiff purchased from the defendant a press for the purpose of doing custom or job printing. He testified that his business required high quality printing, yet there is an abundance of evidence that the machine which he purchased contained a number of specific defects. All of the witnesses but one testified that the printing press did not feed paper properly. The feeder mechanism caused paper jams in the press and this resulted in large accumulations of wasted or nonusable paper.

The record contains evidence consisting of testimony and exhibits that support plaintiff's contention that the press purchased by the plaintiff did not register properly. On jobs requiring the use of two colors the machine left blank or white spaces between the colors which destroyed the contiguous effect that such a press was supposed to provide. There is in the record further evidence of streaking, smearing, slow printing, crooked printing, timing problems and loose and defective parts.

All of the defects in the press purchased by the plaintiff are not present in other presses of the same type whether they be machines sold by other companies or the defendant company.

■■ As we have previously stated, the defendant's defense was based primarily on improper maintenance of the press by the plaintiff and improper operation. The fact that the defects complained of were apparent immediately after delivery is strong evidence against a finding that the problems were caused by improper maintenance. (See *Curtis v. Murphy Elevator Co.* (E.D. Tenn. 1976), 407 F.Supp. 940.) In the instant case there is also testimony from an expert witness that the press was at all times adequately maintained.

We fail to find in the record any evidence of the operation of the press by incompetent individuals. The defendant in its brief acknowledges that Mr. Wiese could be considered an expert operator, yet the record reflects that Mr. Wiese encountered the same frustrating problems as were encountered by other operators.

It is true that the plaintiff made some modifications to the press, *i.e.*, an extra water roller, a piece of wood and some tape. The defendant's witness testified that the addition of the extra roller would make no appreciable difference and that the attached piece of wood which modified the register board did not disturb the witness Sowa, who was a senior service representative for the defendant. His comment was to the effect that Itek Corporation, the defendant, normally supplied something of that nature which did the same job. In the light of such testimony we do not believe that *Erickson v. Sears Roebuck & Co.*, (1966), 240 Cal. App. 2d 793, 50 Cal. Rptr. 143, cited by the defendant, is applicable. In the instant case there was testimony by the defendant's own witness that the plaintiff's slight modifications would not have appreciably affected the operation of the press.

■■ The defendant, while citing no authority, nevertheless argues strongly that specific defects such as were in the press and which caused the poor operation of the machine must be proven by expert testimony. With this contention we disagree for no mention of specific defects is found in the test of a breach of implied warranty of merchantability in our Commercial Code. See Ill. Rev. Stat. 1975, ch. 26, par. 2—314(2)(c).

■■ As we have previously stated, it is our opinion that the plaintiff more than amply proved a breach of implied warranty by the defendant in regard to the printing press.

The trial court in the instant case awarded damages to the plaintiff in the sum of $10,435. This sum included damages for the breach of the implied warranty of merchantability as to the press and also consequential damages for losses sustained by the plaintiff as the result of the press's defective operation.

The Uniform Commercial Code of our State provides for the award of such damages. See section 2—714 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—714), which provides:

> "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, * * *.
>
> (3) In a proper case any incidental and consequential damages under the next section may also be recovered."

■■ Following the language of the statute the first element of damages recoverable by plaintiff is the difference between the value of

the goods accepted and the value they would have had as warranted. The defendant argues that measure of damages for the breach of implied warranty cannot be measured because there was a lack of evidence as to the press's value, as well as the cost of rebuilding the same and what the value of the press would have been if it had been used as a demonstrator. In short, the defendant argues that there is such a dearth of evidence as to values and costs that any award of damages could only be based on conjecture and speculation. We are compelled to disagree with the defendant since we find sufficient evidence in the record to support a determination of damages. It is true that the precise moment of acceptance of the press by the plaintiff cannot be determined; however, such acceptance would have had to have occurred a little more than 60 days following delivery since this was when a replacement request by the plaintiff was refused by the defendant. The record clearly indicates that the cost of the press to the plaintiff including finance charges was $7,006.08. It is proper to include finance charges in arriving at the value of goods as warranted. (See *Thompson Chrysler-Plymouth, Inc. v. Myers* (1972), 48 Ala. App. 350, 264 So. 2d 893.) Since the defects complained of by the plaintiff were present at the time the press was installed we do not deem it unreasonable to accept the figure of $7,006.08 as its warranted value at a time some 60 plus days later. In examining the record we find testimony that the actual value of the defective press at time of acceptance was one sixth of its purchase price or the sum of $1,167. Subtracting this latter figure from the warranted value, to-wit, $7,006.08, we arrive at the figure of $5,839.08 as the amount to which the plaintiff is entitled as the result of the defendant's breach of implied warranty as to the press. It appears from the record and briefs submitted to the trial court by both parties that the trial court arrived at the figure of $5,833 as the first element of damages to be awarded to the plaintiff. In view of such slight discrepancy between the trial court's computation and the computation of this court, to-wit, a difference of $6.08, we unhesitatingly approve of and accept the trial court's computation. Section 1—106 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 1—106) states:

"(1) The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed * * *."

The committee comments to this section reject the doctrine that damages must be calculated to a mathematical certainty. Where the right of recovery exists the defendant cannot escape liability because the damages are difficult to prove. The best evidence which the subject will admit is receivable is nothing more than opinions of persons well informed on the subject under investigation. (See *Johnston v. City of Galva* (1925), 316 Ill.

598, 147 N.E. 453.) The defendant complained of the failure to qualify Mr. Wiese as an expert in the value of printing presses, however, we do not find in the law any such requirement. Without going into an undue recital as to the background, experience and knowledge of Mr. Wiese in the field of printing it is clear to this court that he was well informed as to the value of printing presses.

■■ ■ The second element of damages allowed by the trial court was consequential damages. Such recovery is authorized by section 2—715(2)(a) of the Uniform Commercial (Ill. Rev. Stat. 1975, ch. 26, par. 2—715(2)(a)), which provides:

> "(2) Consequential damages resulting from the seller's breach include
>
> > (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; * * *."

It is the defendant's contention that consequential damages are not recoverable in the instant case since the plaintiff elected to keep the press and continued to use it. In support of this contention the defendant cites the case of *Huyett & Smith Manufacturing Co. v. Saile* (1892), 45 Ill. App. 562. In the first instance we question the defendant's allegation that the plaintiff elected to keep the press. As we interpret the record he had no choice in the matter in that the defendant refused to provide a replacement machine. It is true that the plaintiff in spite of many problems did continue to use the machine in an effort to maintain his business; however, we do not deem such continued usage as grounds for denying the recovery of consequential damages. (See *Melody Home Manufacturing Co. v. Morrison* (Tex. Civ. App. 1973), 502 S.W.2d 196.) The provisions of our Commercial Code relating to the recovery of consequential damages does not require any prior agreement on the part of the seller that he may be held liable for such damages. See *Adams v. J. I. Case Co.* (1970), 125 Ill. App. 2d 388, 261 N.E.2d 1.

■■ Without making a further recital of the facts we can summarize the evidence adduced regarding consequential damages by stating that it was proved that the defendant's press did not increase the plaintiff's volume of printing, but on the contrary his output decreased. The plaintiff spent 1000 hours trying to get the machine to work properly and this time is in addition to that expended by Mr. Wiese and other employees who attempted to correct the press's defects. There is also evidence of a great loss of paper as the result of what in printing parlance is known as a "jam up." Lost profits are also a proper element to consider in determining consequential damages. (See *Adams v. J. I. Case Co.* (1970), 125 Ill. App. 2d 388, 261 N.E.2d 1, and *Fruehauf Trailer Co. v.*

*Lydick* (1944), 325 Ill. App. 28, 59 N.E.2d 551.) Based upon the facts already recited it is obvious that the plaintiff suffered loss of profits. Mr. Wiese testified that at least $15 per hour should have been generated by the press if it operated properly; however, during the 1000 hours he operated the press one-third of his time was wasted and unproductive as the result of the press's defects.

■■ The trial court entered a judgment for the plaintiff and against the defendant in the sum of $10,435. This total sum granted included consequential damages. We are of the opinion that the evidence adduced during the course of the trial well supports the trial court's granting of a total judgment in this amount.

For the reasons set forth the judgment of the Circuit Court of Tazewell County is affirmed.

Judgment affirmed.

STENGEL, P. J., and STOUDER, J., concur.