WENDELL DURR et al., Plaintiffs-Appellees, v. JOHN STILLE, Pin Oak Township Highway Commissioner, Defendant-Appellant.

Fifth District   No. 5—84—0271

Opinion filed December 17, 1985.

Arthur F. Wendler, of Troy, for appellant.

William J. Mateyka, of Mateyka, Hill & Hill, of Edwardsville (Dennis A. Brandt, of counsel), for appellees.

JUSTICE JONES delivered the opinion of the court:

The plaintiffs, Wendell Durr and Jean Durr, brought suit in negligence against the defendant, John Stille, Pin Oak Township Commissioner, for damages sustained by their two automobiles when the plaintiffs drove over a stretch of township road that had been freshly oiled and covered with gravel. Following a bench trial the trial court entered judgment for the plaintiffs in the amount of $175 and costs. The trial court denied the defendant's motion to reconsider, and this appeal followed. The defendant raises two issues for review:

"Whether the highway commissioner is liable to an individual for damages for removal of oil from a motor vehicle after the highway commissioner has determined that a township road should be oiled; covered with rock and gravel; and immediately opened to the public.

And whether the highway commissioner was negligent in not posting signs advising the public that the township road had been oiled and covered with rock and gravel."

According to an agreed statement of facts, the plaintiffs filed suit alleging property damages because of the defendant's negligence in "not having provided any warnings of fresh oil on a township road and the resulting oil coating of their motor vehicles." The defendant denied liability. Called as an adverse witness by the plaintiffs, the defendant testified that he was the duly elected highway commissioner of Pin Oak Township and authorized to maintain the township roadways. On August 25, 1982, at about 3 p.m. he oiled the road in question for a distance of about a fourth of a mile and put on three-eighths of an inch of gravel. There were no other exists from this stretch of road. A sign was placed at each end of the stretch of road warning that oiling was in progress. Immediately upon completing the oiling of the road the signs were removed. No other warning signs were placed there. Sharon Durr testified that on August 21, 1982, she and Kerri Durr had cleaned the two motor vehicles in question and that on August 25, 1982, the vehicles had a "thick black carpeting of road oil up in them, up on the wheel wells, all over the undercarriage,

and along the door sills and inside the door framing." The plaintiff Jean Durr testified to having driven on the road in question at about 4 on the afternoon of

"August 24 [sic] while it was raining \*\*\*. She was in no hurry, was traveling at a speed of 25-30 miles per hour, there was no fresh oil flowing off the road, the road being wet and it being then raining, the surface of the road looked like a normal wet country road. She heard a slushing noise similar to driving on wet rock road and there was no visible warning by the appearance of the road and no signs of warning of the freshly oiled condition of the road."

Jean Durr testified further that she, Kerri Durr, and the plaintiff Wendell Durr spent in excess of 24 hours cleaning up the damage caused by the oil. She valued the labor at $10 per hour.

The plaintiff Wendell Durr testified "substantially to the same facts as did Jean Durr," stating that he had driven on the road in question at about 4:30 p.m. at a speed of 35 to 40 miles per hour "on this narrow, two-lane hilly township road, that it was still raining, that the road surface simply looked like a wet surface and that there was no warning signs [sic] nor any indication by the surface of the road itself that it was freshly oiled or anything other than a normal wet rural road." John Stille testified on direct examination that after the road was oiled it was opened immediately to traffic, that "he drove it immediately at 45 miles per hour and that he got oil all over his pick-up truck in the process."

■ In his brief the defendant contends, in reliance upon *Mora v. Illinois* (1977), 68 Ill. 2d 223, 369 N.E.2d 868, and *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 246 N.E.2d 24, that he was exercising his discretion as a highway commissioner in the maintenance of the road in question and was, as a result, protected against the imposition of personal liability by virtue of the immunity in favor of public officials who are exercising their official discretion. However, the record gives no indication that the issue of immunity was litigated in the trial court. It is axiomatic that questions not raised in the trial court are deemed waived for review and may not be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 475 N.E.2d 872.) Therefore, we decline to consider the issue of immunity.

We turn to the second issue defendant presents, concerning the absence of negligence. In order to state adequately a cause of action for negligence, the allegations must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty,

and an injury proximately resulting from that breach. (*Zimmerman v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502.) While the questions of whether a duty has been breached and whether the breach proximately caused an injury are factual matters, the existence of a duty must be determined by the courts as a matter of law. (*Zimmerman v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502.) Concerning the existence of a duty our supreme court observed in *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535, 538, that

> "[n]ecessary to any recovery based on the theory of common law negligence is the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. Whether under the facts of a case such a relationship exists between two parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court. (Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 37.)"

Illinois courts have been called upon often in negligence cases to determine whether under the facts presented a duty exists. As we said in *Zimmerman v. Netemeyer*, the true basis of all decisions with regard to duty by Illinois courts is that of policy considerations. The policy basis of duty, as we said further in *Zimmerman v. Netemeyer*, is

> "necessarily a nebulous and ill-defined area of the law. It is a reflection of the needs, the wishes and the tolerances of society as determined by the court as it faces the duty issue. The court's perceptions of duty in negligence cases will change as society changes. The true essence of the process of determining duty is revealed in the fact that different judges, different courts, can justifiably reach different conclusions on the existence of a duty from a consideration of the same set of facts." (*Zimmerman v. Netemeyer* (1973), 122 Ill. App. 3d 1042, 1051, 462 N.E.2d 502, 509.)

Professor Leon Green in *The Duty Problem in Negligence Cases*, 28 Colum. L. Rev. 1014, 1034-35 (1928), suggested the following as the factors underlying the policy determinants of duty:

> "The following are believed to be the factors of most significance in influencing the determination of duties and through them the limits of the protection afforded by law. There are doubtless others:
> 1. The administrative factor.

2. The ethical or moral factor.
3. The economic factor.
4. The prophylactic factor.
5. The justice factor.

Each of these must be satisfied somewhat in every acceptable decision. No judgment can long prove acceptable which develops very great pressure at any one of these points. No one can be overstressed, though now one and then the other will seem to be dominant. If a human desire or interest cannot be given protection without offending one or more of what might be called the 'social senses' corresponding to these several factors, then it must go without protection; there is no duty to respect it. These 'senses' as developed in judges and through the judicial process are therefore of the greatest importance. Their influence can be demonstrated in hundreds of cases."

In a highly similar vein is the statement of Professor Prosser regarding the policy foundation of duty:

" '[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.

\* \* \*

[T]he courts have merely 'reacted to the situation in the way in which the great mass of mankind customarily react,' and that as our ideas of human relations change the law as to duties has changed with them. Various factors undoubtedly have been given conscious or unconscious weight, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." Prosser, Torts sec. 53, at 325-27 (4th ed. 1971).

■■ In the instant case, the plaintiffs maintain that the defendant had a duty to warn that the stretch of road in question had been freshly oiled. It is common knowledge that a freshly oiled road on a clear day has a distinctive look that, itself, serves as a warning to motorists to slow down in order to diminish the amount of road oil that may be thrown up onto their vehicles. Apparently in the rain the freshly oiled road seemed to be wet merely with water. However, if the township commissioner were obliged to warn motorists traveling in the rain that a roadway had been freshly oiled, he or she would be

obliged to place such warnings on all freshly oiled roads, and to retrieve them, because it could not be known that rain would not fall before the oil had been sufficiently absorbed to prevent its being splattered onto passing vehicles. The burden upon the road commissioner, as well as State, county, and municipal officials, for example, who are responsible for such maintenance of roadways, to post and remove warning signs for every stretch of road that must be oiled would be substantial. Similarly, our supreme court in *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 573, 372 N.E.2d 822, 827, held that the defendants, the county of McLean and the county superintendent of highways, had no duty to warn users of the highway in question of conditions resulting from the natural accumulation of snow and ice, because of the potential burden:

> "As the plaintiffs admitted in oral argument, a decision in their favor would require the defendants to post warning signs under comparable weather circumstances on every highway subject to their jurisdiction. A similar duty would arise for townships, forest preserve districts, park districts, and any other type of local public entity included under section 1—206 of the Act. The impracticability and the expense of posting warning signs, and the demands on available manpower would be comparable to those to which the court referred in the *Graham* decision [(1931), 346 Ill. 638, 178 N.E. 911]."

Following *Lansing,* we recently held in *Hoxsey v. Houchlei* (1985), 135 Ill. App. 3d 176, that the defendants, the Shoal Creek Township, and the township road commissioner, had no duty to users of the roadway in question to erect signs warning of flood waters. Furthermore, in the instant case the damage suffered by the plaintiffs is minor property damage of a kind that the average person can himself repair by cleaning, without resort to professional or commercial services and without the need of any special knowledge or equipment. For these reasons, we hold that the defendant was under no duty to the plaintiffs to warn that the quarter-mile stretch of road in question had been freshly oiled. To hold otherwise would place an unreasonable burden on those responsible for the maintenance of roadways.

Reversed.

KASSERMAN, P.J., and KARNS, J., concur.