DONALD WAYNE WATKINS *et. al.*, Plaintiffs-Appellants, v. MT. CARMEL PUBLIC UTILITY COMPANY *et al.*, Defendants-Appellees.

Fifth District   Nos. 5—86—0298, 5—86—0781 cons.

Opinion filed January 11, 1988.—Rehearing denied February 17, 1988.

KARNS, J., concurring in part and dissenting in part.

F. Ronalds Walker, of Law Offices of F. Ronalds Walker, of Grayville, for appellants.

Bleyer & Bleyer, of Marion, for appellee Mt. Carmel Public Utility Company.

Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville (Edward Benecki and William Rudert, of counsel), for appellee Hocking Oil Company.

JUSTICE WELCH delivered the opinion of the court:

Plaintiffs, Donald Wayne Watkins and his wife Kathleen Watkins, commenced this action to recover for personal injuries suffered by Donald Wayne Watkins as a result of an electric shock and subsequent fall. Plaintiffs named as defendants Hocking Oil Company, the landowner (hereinafter Hocking), and Mt. Carmel Public Utility Company (hereinafter Utility). The circuit court of Wabash County entered an order on April 4, 1986, dismissing with prejudice plaintiffs' second amended complaint with respect to defendant Hocking. On November 5, 1986, the court dismissed with prejudice plaintiffs' fourth amended complaint with respect to defendant Utility. Plaintiffs appeal both orders.

Defendant Hocking hired plaintiff Donald Watkins as an independent contractor to process crude oil stored in two large tanks operated by Hocking. The storage tanks were constructed near an uninsulated power line which had been erected approximately 40 years earlier by defendant Utility. A catwalk connects the tanks and provides access to the top of the tanks. On January 20, 1983, plaintiff received an electric shock and fell from the catwalk when the aluminum gauging pole with which he was working came into contact with the power line owned by Utility. Plaintiffs filed an original complaint and a series of amended complaints alleging that the losses suffered by plaintiffs were the result of negligent acts or omissions of the defendants. The circuit court dismissed each complaint for failing to allege facts sufficient to state a cause of action against either defendant. In particular, the circuit court ruled that the plaintiffs failed to allege facts sufficient to establish a duty owed to plaintiffs by defendants. On appeal, plaintiffs argue that the rulings of the circuit court were erroneous.

■ Illinois is a fact-pleading State, requiring that plaintiffs allege facts sufficient to bring a claim within the scope of a legally recognized cause of action. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1008-09.) If the well-pleaded facts and the inferences drawn therefrom do not bring a claim within the scope of a legally recognized cause of action, dismissal is proper (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256-57, 492 N.E.2d 1340, 1342); however, no cause of action should be dismissed on pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recovery. *Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746, 748, 498 N.E.2d 575, 576; *Ewing v. Liberty Mutual Insurance Co.* (1985), 130 Ill. App. 3d 716, 718, 474 N.E.2d 949, 951.

■■■ In order to state a cause of action for negligence, the allegations of the complaint must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Durr v. Stille* (1985), 139 Ill. App. 3d 226, 229, 487 N.E.2d 382, 383.) While the questions of whether a duty has been breached and whether the breach proximately caused an injury are factual matters, the existence of a duty must be determined by the courts as a matter of law. (*Zimmerman v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1044-45, 462 N.E.2d 502, 505.) Concerning the existence of a duty, our supreme court followed the language of Prosser (W. Prosser, Torts §37 (4th ed. 1971)) and stated that "[w]hether under the facts of a case such a relationship exists between two parties as to require that a legal obligation be imposed upon one for the benefit of another is a question of law to be determined by the court." (*Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535, 538.) In accordance with this language, the circuit court in the instant case ruled that after three attempts the plaintiffs had failed to state a cause of action against defendant Hocking and that after five attempts the plaintiffs had failed to state a cause of action against defendant Utility.

■■ Beginning with defendant Hocking, it is plaintiffs' contention that defendant Hocking is liable for the injuries sustained by plaintiff Donald Watkins while an invitee on Hocking's land. According to the Restatement (Second) of Torts, section 343, the law regarding the liability of possessors of land to invitees is as follows:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." (Restatement (Second) of Torts §343 (1965).)

The supreme court applied these Restatement provisions in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 469, 343 N.E.2d 465, 472, and decided that a business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land. In *Genaust*, the plaintiff was injured during the installation of a galvanized steel tower and antenna on the landowner's property when

the antenna came in close proximity to uninsulated power lines. Plaintiffs in the instant case argue that *Genaust* is inapplicable here because the court in *Genaust* did not consider section 343 A of the Restatement (Second) of Torts (1965).

Section 343 A provides:

"Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (Restatement (Second) of Torts §343 A (1965).)

Comment *f* of the Reporter's notes to section 343 A states that a possessor of land may be under a duty of care to an invitee who knows of the danger on the possessor's premises if the possessor has reason to expect that (1) "the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it"; or, (2) "the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts §343 A, comment *f*, at 220 (1965).

■ Plaintiffs in the present case rely on section 343 A in arguing that defendant Hocking had a duty to protect plaintiff Donald Watkins from the danger created by constructing the oil storage tank near the electrical wire, regardless of the obvious nature of the danger, because Hocking could anticipate the harm despite such obviousness. Following the ruling that no cause of action should be dismissed on the pleadings unless it plainly appears that no set of facts can be proved which will entitle plaintiffs to recover (*Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746, 498 N.E.2d 575, *appeal denied* (1987), 113 Ill. 2d 575, 505 N.E.2d 353), we opine that plaintiffs' second amended complaint alleges facts sufficient to bring a cause of action sounding in negligence. We therefore reverse the judgment dismissing the complaint, in parts pertinent to defendant Hocking, and the cause is remanded for further proceedings not inconsistent with this opinion.

■ Turning now to defendant Utility, we find that the dismissal with prejudice of plaintiffs' fourth amended complaint is without error. Plaintiffs argue that Utility had a duty to safely position its powerlines and to insulate them or place protective guards around them in areas where human contact is foreseeable. Plaintiffs support their argument with cases such as *German v. Illinois Power Co.*

(1983), 115 Ill. App. 3d 977, 451 N.E.2d 903, and *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665, which state that a legal duty is owed by an electric utility company to those persons who are liable to come into contact with wires owned by the company. Further, plaintiffs cite *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354, and *McGill v. Illinois Power Co.* (1959), 18 Ill. 2d 242, 163 N.E.2d 454, as placing upon the purveyors of electrical energy a high degree of duty toward others in correspondence to the extreme hazards of electrical generation and transmission. However, we find plaintiffs' reliance upon these and other similar cases (see also *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 344 N.E.2d 509; *Ploense v. Illinois Power Co.* (1971), 2 Ill. App. 3d 874, 275 N.E.2d 920; *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 465 N.E.2d 513; *Cantu v. Utility Dynamics Corp.* (1979), 70 Ill. App. 3d 260, 387 N.E.2d 990; *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 340 N.E.2d 550) to be misplaced.

In *German*, we found that it was foreseeable that a workman employed on or about a large commercial building could come into contact with power lines located parallel to and within five feet of the building and therefore the utility company had a duty to warn anyone known to be working in the area that the weatherproof covering which gave a deceptive appearance of insulation was not insulation. This differs from the instant case in two distinct ways. First, the lines in *German* were five feet away from and parallel to the worker, whereas in the case before us now the lines were approximately 13 feet away and above the worker. Second, the lines in *German* appeared to be insulated and therefore less dangerous than the wires in the case now before us. These significant fact differences make *German* inapposite to the instant case, where the positioning and appearance of the lines do not give rise to a duty on behalf of Utility to warn potential victims of possible danger.

In *Merlo*, plaintiff was injured when a crane that was being used to excavate a sewer came into contact with an uninsulated power line erected in close proximity to the street. The supreme court found it was foreseeable that men working in the street might come into contact with the wires; therefore, the utility company owed a duty to the workers to insulate the lines. Considering only that stated above, *Merlo* appears to work in plaintiffs' favor; however, the court clarified that the duty to insulate does not extend to the entire system and that one engaged in the business of transmitting electricity is only required to exercise such care and caution as a person of ordinary pru-

dence might reasonably be expected to exercise. (*Merlo*, 381 Ill. at 314-15, 45 N.E.2d at 673.) Although the lines in the case before us ran parallel to a road, the fact that the lines were approximately 13 feet from the catwalk connecting the tanks, coupled with the fact that the tanks were installed many years after the lines had been erected, makes it unreasonable to expect Utility to insulate the lines.

■ It is our opinion that the circumstances in the present case imposed no duty upon defendant Utility to take precautions against an accident that was not reasonably foreseeable. In determining whether a duty exists, a court must apply a foreseeability test that brings within the scope of defendant's liability any injury which is objectively reasonable to occur, and not everything which might conceivably occur. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 466, 343 N.E.2d 465, 471.) The injuries in the cases cited above, upon which plaintiffs rely, were objectively reasonable to occur, whereas the injury in the instant case falls within the "might conceivably occur" category. For example, it is objectively reasonable to foresee that a crane operated below live electrical wires wreaks havoc and cries out for utility company attention, as in *Burke* and *Merlo*, whereas the construction of storage tanks in the vicinity of live electrical wires portrays no such impending doom. That someone might work upon these storage tanks holding a 14-foot pole angled above and away such that the pole would contact the electrical wires is clearly in the "might conceivably occur" category rather than the "objectively reasonable" category.

■ Plaintiffs allege that stated company policies and National Electrical Safety Code sections imposed a duty upon defendant Utility; however, after five drafts, plaintiffs' complaint fails to allege any basis upon which Utility might be bound by these provisions. We refer again to the teachings of *Merlo v. Public Service Co.*, where the court stated that utility companies are not the insurers of public safety, and the degree of care exercised by purveyors of electricity should be commensurate with the danger created by electrical wires in a given situation. (*Merlo*, 381 Ill. at 314-15, 45 N.E.2d at 673.) Economic realities make unrealistic the possibility that utility companies might insulate all of their power lines, which in many instances amount to thousands of miles. Likewise, it is unreasonable for economic and aesthetic reasons that utility companies place warning signs at any location where injury might be possible, regardless of how remote the possibility may be.

Because it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover against defendant Utility, we af-

firm the circuit court's dismissal with prejudice of plaintiffs' fourth amended complaint.

For the reasons stated, the ruling of the circuit court of Wabash County is hereby affirmed in part and reversed in part and shall be remanded for further consideration as to defendant Hocking.

Affirmed in part; reversed in part and remanded.

HARRISON, P.J., concurs.

JUSTICE KARNS, concurring in part and dissenting in part:

I concur in the opinion of the court affirming the trial court's dismissal of the cause against Mt. Carmel. I dissent from that part of the opinion concluding that a cause of action against Hocking was or could be pleaded by plaintiff under these facts.

Courts of this and all jurisdictions have consistently held that an owner or possessor of land has no duty to warn or take precaution against the danger of overhead or nearby electrical transmission lines absent the presence of unusual circumstances (see, *e.g.*, *German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 451 N.E.2d 903). Under section 343 A of the Restatement (Second) of Torts, a possessor of land has no duty to warn or take precaution against known or obvious dangers unless he should anticipate harm despite the obviousness of the danger. How could Hocking anticipate that plaintiff, an independent contractor and expert in the processing of crude oil stored in tanks, which are necessarily placed adjacent to an electrical power source, would allow a long, metal pole to come in contact with overhead transmission lines? What precautions could it take? Under the reasoning of *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465, which factually closely parallels this cause, the judgment of the trial court should be affirmed.