DAVID B. GARAVALIA, as Ex'r of the Estate of Arvo Lake, Deceased, Plaintiff-Appellant, v. HEAT CONTROLLER, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0749

Opinion filed April 19, 1991.

HOWERTON, J., dissenting.

Paula M. Newcomb, of Benton, for appellant.

Brad K. Bleyer, of Bleyer & Bleyer, of Marion, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

This is an appeal pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) from an order of the circuit court of Franklin County which granted the motion of defendants Addison Products Company, Inc., and Heat Controller, Inc., to dismiss counts I, II, III, V, VI, IX, and X of plaintiff's second amended complaint for failure to state a cause of action. For the reasons which follow, we reverse and remand for further proceedings.

■ Although it did not so specify, defendants' motion to dismiss was clearly brought pursuant to section 2—615 of the Code of Civil

Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). It is axiomatic that in ruling on a motion to dismiss under section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), a court must accept as true all well-pleaded facts in the pleading attacked, as well as all reasonable inferences which can be drawn from those facts that are favorable to the pleader. (*Bertetto v. Sparta Community Unit District No. 140* (1989), 188 Ill. App. 3d 954, 955, 544 N.E.2d 1140, 1141.) A cause should not be dismissed on the grounds that the pleadings fail to state a cause of action unless, clearly, no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (188 Ill. App. 3d at 955, 544 N.E.2d at 1141-42.) Plaintiff's second amended complaint is not fatally deficient under this standard.

The complaint alleges that the decedent, Arvo Lake, purchased a window air conditioner from Odell Giles on or about May 1, 1986. The unit was manufactured by defendants Addison Products Company, Inc., and Heat Controller, Inc., and was delivered to and installed in the decedent's residence by Giles.

At that time the decedent was 71 years old and retired. The decedent relied on Giles, who was in the business of selling air conditioners, to select and furnish a unit which was suitable for cooling his residence. The particular unit selected by Giles was, according to the manufacturers, suitable for use in a residence such as the decedent's. The unit was installed in decedent's residence in accordance with the instructions contained in the owner's manual, the decedent made no modifications to the unit once it was installed, and the decedent attempted to operate the unit as directed in the owner's manual.

Plaintiff's second amended complaint indicates that the decedent relied upon the unit to cool his residence and that because he remained at home a good deal of the time, he used the unit for extended periods. At the time the decedent purchased the unit, however, it contained a hole in the sealed refrigerant system, which allowed the refrigerant to seep out. By the beginning of August 1986, the unit ceased cooling. The blower continued to operate, but the air conditioner would produce only warm air. As a result, the decedent's residence reached a temperature of at least 96 degrees Fahrenheit. This, in turn, caused the decedent to suffer from hyperthermia, which produced acute circulatory failure from which he died. When the decedent's body was discovered, it registered a temperature of 108.4 degrees.

Plaintiff, David B. Garavalia, as executor of the decedent's estate, subsequently commenced this action in the circuit court of

Franklin County. Plaintiff's complaint was in 10 counts. Of these, only counts I, II, III, V, VI, IX, and X were directed against the defendants involved in this appeal. Counts I and II alleged breach of an express warranty. Count III alleged breach of an implied warranty. Counts V and VI averred that defendants were guilty of negligence, while counts IX and X sought recovery based on strict products liability.

The circuit court dismissed counts I, II, and III of plaintiff's second amended complaint, which alleged breach of warranty, because and only because those counts included a claim for consequential damages. This was error. Actions for breach of warranty are governed by the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1987, ch. 26, par. 1—101 *et seq.*). Although section 1—106(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 1—106(1)) states that "neither consequential or special nor penal damages may be had except as specifically provided in this Act or by other rule of law," section 2—714(3) of the Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—714(3)) provides such a specific exception. That provision expressly authorizes the recovery of "incidental and consequential damages" in a proper case pursuant to the terms of section 2—715 of the Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—715). Recoverable consequential damages under section 2—715 include "injury to person or property proximately resulting from any breach of warranty." Ill. Rev. Stat. 1987, ch. 26, par. 2—715(2)(b).

That consequential damages are recoverable in actions for breach of warranty is an established proposition. (See, *e.g., Burrus v. Itek Corp.* (1977), 46 Ill. App. 3d 350, 358, 360 N.E.2d 1168, 1173.) Equally well established is the proposition that to be recoverable under section 2—715(2) (Ill. Rev. Stat. 1987, ch. 26, par. 2—715(2)), the consequential damages must have been reasonably foreseeable. (*McGrady v. Chrysler Motors Corp.* (1977), 46 Ill. App. 3d 136, 140, 360 N.E.2d 818, 821.) A question of foreseeability may sometimes be decided by the court as a matter of law. (See, *e.g., Malorney v. B & L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265, 269, 496 N.E.2d 1086, 1089.) As a general rule, however, questions of foreseeability are ordinarily for the jury to resolve. The courts of this State have so held in a variety of contexts (see, *e.g., Falkenbury v. Elder Cadillac, Inc.* (1982), 109 Ill. App. 3d 11, 18, 440 N.E.2d 180, 186; *Medina v. Air-Mite Devices, Inc.* (1987), 161 Ill. App. 3d 502, 507, 515 N.E.2d 770, 773), and this rule has been expressly applied in the context of claims for consequential damages based on breach of warranty under the Uniform Commercial Code (see Annot., *Buyer's Inci-*

*dental & Consequential Damages from Seller's Breach under UCC §2—715,* 96 A.L.R.3d 299, 329 (1980); 67A Am. Jur. 2d *Sales* §1314, at 739 (1985)). Foreseeability should be decided as a matter of law only where the facts demonstrate that plaintiff could never be entitled to recovery. (*Medina v. Air-Mite Devices, Inc.* (1987), 161 Ill. App. 3d 502, 507, 515 N.E.2d 770, 773.) This is not such a case.

The pleadings here show that Arvo Lake, the decedent in this case, lived in Benton, Illinois. Benton is located in a portion of this State where the summer heat and humidity are often intense. Heat-related fatalities in this climate are not uncommon. The risk of death appears to be particularly great for the aged and infirm. Because of physical limitations or fear of crime, or for economic reasons, such persons may have no option but to remain in their homes regardless of the heat. For them, air conditioning units are more than just another "benign" household appliance. They may, quite literally, be life-saving devices, as critical to health and safety as a dialysis machine is to a kidney patient.

When such a device fails, death is certainly reasonably foreseeable. Indeed, a defective air conditioner may be more life threatening than no air conditioner at all. If a person has no air conditioning, he will ordinarily open windows or doors to provide some natural ventilation. Where an air conditioning unit is installed, on the other hand, efficient operation of the unit requires that all doors and windows be tightly sealed. All natural ventilation is cut off, and the user typically relies exclusively on the unit to provide cooling and circulation. If the unit fails, the user may therefore be left to swelter in an environment far more stifling and oppressive than if the unit had never been installed and the house had never been sealed up.

The suggestion has been made that when faced with a failing air conditioner, a purchaser could reasonably be expected to simply flip the switch, unplug it and plug it back in, curse it, call a repairman, and, when all else fails, leave the house for a leisurely stroll to the nearest shade tree or lake. Such an assumption has no basis in the pleadings before us and seems to us to be completely unrealistic.

We do not profess to have any special knowledge of how air conditioners or any other mechanical devices operate. However, by virtue of the defect alleged here, a leak in the refrigerant system, we think it can be reasonably inferred that the unit did not fail all at once, but instead lost its cooling power gradually over the three-month period between when the decedent bought it and the time he died. This gradual loss of function, coupled with the fact that the blower on the unit continued to operate, may have prevented the de-

cedent from comprehending that the unit was not acting properly and was in need of repair. Moreover, even if the decedent did realize that the unit was not operating as it should, he may have believed that the operation of the blower was adequate to ventilate his house and prevent it from becoming dangerously overheated.

In any case, senior citizens such as decedent often do not have the luxury of simply leaving their homes and seeking out the nearest shade tree or lake. As previously suggested, they may suffer from some disability that prevents them from going outdoors at all or even raising a window. They may live in an area where it is unsafe for old people to venture out or to leave their windows open. They may reside in neighborhoods where there are no shade trees or other sanctuaries from the heat, and they may not have the stamina or wherewithal to go elsewhere.

Taking all reasonable inferences in favor of plaintiff, as we must, we therefore do not believe that we can say as a matter of law that defendants could not reasonably have foreseen that the failure of their air conditioning unit would result in the death of a purchaser such as plaintiff. The circuit court's dismissal of counts I, II, and III must therefore be reversed. We likewise believe that we must reverse the circuit court's dismissal of counts V and VI, which alleged negligence.

■ A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately caused by that breach. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) The defendants here do not dispute that the second and third of these elements were properly alleged. Their sole contention is that they cannot be said to have owed any duty to plaintiff's decedent. In our view, this conclusion is wholly untenable.

■ The defendants found their argument that no duty existed upon the proposition that it was not reasonably foreseeable that the failure of an air conditioner would result in the actual death of the person who had purchased it. For the reasons stated above, we do not believe that this is so. Moreover, this argument overlooks that in determining whether an injury was reasonably foreseeable so as to warrant the imposition of a duty, it is not essential that the defendant should have foreseen the precise injury resulting from the defendant's action or inaction. (See *Carter v. Indiana Harbor Belt R.R. Co.* (1989), 190 Ill. App. 3d 1052, 1061-62, 547 N.E.2d 488,

495.) Whether defendants could reasonably have foreseen that a purchaser would actually be killed as was the decedent is therefore not dispositive.

The defendants' duty analysis is not only incorrect, it is also completely unnecessary. Our supreme court has recently recognized that " 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 527, 513 N.E.2d 387, 396, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) In the case of product manufacturers such as defendants, these policy considerations have already been weighed and balanced by this court. We have specifically held that a manufacturer has a duty of care to design and manufacture a product that will be reasonably safe for its intended and any reasonably foreseeable uses. (*Cornstubble v. Ford Motor Co.* (1988), 178 Ill. App. 3d 20, 24, 532 N.E.2d 884, 886.) Given this, there can be no serious doubt that the defendants owed a duty to plaintiff's decedent here. Whether that duty was breached and whether the decedent's death was a proximate result of that breach are questions which should ultimately be decided by the jury, but the fact that a duty existed is thus clear and unequivocal as a matter of law.

■ Finally, we must reverse the dismissal of counts IX and X, which sought recovery based on strict products liability. Recovery from a manufacturer under the theory of strict products liability requires a plaintiff to prove that his injuries resulted from a condition of the product, that the condition was unreasonably dangerous, and that the condition existed at the time the product left the manufacturer's control. (*Medina v. Air-Mite Devices, Inc.* (1987), 161 Ill. App. 3d 502, 505-06, 515 N.E.2d 770, 772.) Defendants here acknowledge this standard, but contend that the air conditioner was not unreasonably dangerous as a matter of law. We disagree. A product is considered to be unreasonably dangerous only when the product is dangerous to an extent beyond that which would be contemplated by the ordinary person with the ordinary knowledge common to the community as to its characteristics. (*Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 155, 507 N.E.2d 1213, 1226.) We believe that an ordinary consumer would not contemplate being killed by an air conditioner which is defective in that it leaked itself dry of Freon and failed to cool, which is precisely what is alleged to have happened here. Accordingly, the complaint did adequately aver that the unit was unreasonably dangerous.

■ This conclusion is in no way inconsistent with our view that the death of a purchaser such as the decedent was a reasonably foreseeable consequence of the defect in the air conditioning unit. To the contrary, we think that the risk of death is particularly likely precisely because an ordinary consumer would not appreciate the risk to life posed by an air conditioning unit which had lost its Freon and blew only hot air.

In any case, the issue of whether a product is unreasonably dangerous is normally a question of fact for the jury. (*Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 511, 373 N.E.2d 1354, 1367.) Based on the pleadings here, we can see no reason to prevent the jury from resolving that question.

For the foregoing reasons, we reverse the order of the circuit court of Franklin County dismissing counts I, II, III, V, VI, IX, and X, and remand for further proceedings.

Reversed and remanded.

RARICK, P.J., concurs.

JUSTICE HOWERTON, dissenting:
I disagree with the proposition that on a hot day, anything is foreseeable, for I think that that is the upshot of the majority opinion. Therefore, I respectfully dissent.

I view the dispositive issue in this case to be whether it was reasonably foreseeable that Arvo Lake would become overheated and die because an air conditioner failed to blow cold air.

Counts I and II of plaintiff's complaint assert that: (1) defendants, Addison and Heat Controllers, were in the business of manufacturing, distributing, and placing air conditioner units into the stream of commerce; (2) defendants manufactured the air conditioner in question; (3) Lake purchased the air conditioner; (4) at the time of the purchase, the air conditioner had an express warranty which guaranteed that the unit's sealed refrigerant system would be free from defect for five years; (5) Lake relied on the express warranty; (6) defendants breached the express warranty because there was a leak in the sealed refrigerant system; (7) Lake was attempting to cool his house with the unit at a time within the warranty period; (8) as a direct result of defendants' breach, Lake's residence reached 96 degrees, his body 108.4 degrees, and he suffered hyperthermia and acute circulatory failure causing death; and (9) because of this breach of warranty, plaintiff sustained economic loss including the value of

the air conditioner and funeral expenses, and "other consequential damages."

Count III was much the same, but alleged that defendants breached an implied warranty of merchantability, and also sought consequential damages.

While the Uniform Commercial Code allows for the recovery of consequential damages in a breach of warranty action (Ill. Rev. Stat. 1987, ch. 26, par. 2—715(2)), such damages may be recovered only in a "proper case." (Ill. Rev. Stat. 1987, ch. 26, par. 2—714(3).) A "proper case" means a case where consequential damages are "reasonably foreseeable." (*McGrady v. Chrysler Motors Corp.* (1977), 46 Ill. App. 3d 136, 360 N.E.2d 818.) "Foreseeability means that which is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 5.

In my judgment the majority has strained to supply inferences to support plaintiff's cause of action, an exercise that carries the majority into the dark and forbidding realm of "what might conceivably occur." The majority speaks of: (1) plaintiff's limitations; (2) the heat of a southern Illinois summer; (3) the potential for crime in plaintiff's neighborhood; and (4) the gradual loss of coolant in the air conditioner. For example, the majority notes that Lake was 71 years old and retired. From that, the majority assumes physical limitations that will make a cause of action lie. But we cannot, we should not, make those assumptions: not every 71-year-old man is so infirm that he cannot recognize that heat in his house is rising to dangerous levels. It is, therefore, wrong to supply such an inference. It is the duty of the plaintiff to plead special circumstances, if they exist. If none are pled, judges do best to presume that none exist. In supplying inferences, the majority has relieved plaintiff from pleading the necessary information, the special circumstances, necessary to establish foreseeability.

Section 2—715(2)(b) of the Code specifically provides that consequential damages include "injury to person or property *proximately resulting* from any breach of warranty." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 26, par. 2—715(2)(b).) "Proximate result" means a result "ordinarily following from the negligence complained of, unbroken by any independent cause, which might have been reasonably foreseen." (Black's Law Dictionary 1391 (4th ed. 1957).) Although the definition of "proximate result" contains the word "negligence," that definition should not be viewed as engrafting general principles of negligence law on this provision of the Uniform Commercial Code.

Our concern here is not negligence, but rather is with the meaning and effect of the term "proximately resulting" within the Uniform Commercial Code. In this regard, the definitions of the term, "a proper case," and the term, "proximate result," establish that "reasonable foreseeability" necessarily must be addressed when determining whether consequential damages are available in a breach of warranty action brought not for property damage but for personal injuries.

As a matter of law the manufacturer of an air conditioner, a rather benign machine, has no reason to reasonably foresee that an air conditioner's failure to cool would kill a purchaser. This is but a lawyer's way of stating the obvious. Air conditioner manufacturers reasonably would believe that if an air conditioner failed to blow cold air, the purchaser might flip the switch a time or two, or perhaps unplug it and plug it back in, maybe even curse it, or perhaps call a repairman; but, when all failed the purchaser could be expected to walk outside to the shade, or maybe even go to the lake, instead of remaining in a hot house until overcome and killed by the escalating heat.

Had the complaint alleged special circumstances, the case might be different. Had the complaint, for example, alleged that leaking Freon caused plaintiff to pass out, rendering him powerless to do anything about his situation so that the rising heat overtook him and stole his life, then the foreseeability equation might look different.

Under the allegations of this complaint, however, there can be no "reasonable foreseeability," and consequently, no "proximate result" within the meaning of the Uniform Commercial Code. Therefore, based on the pleadings, I believe that Lake's death was not a proximate result of defendants' breach of warranty, and I agree with the circuit court that this is not a "proper case" in which consequential damages can be sought.

Whether Lake's injury was reasonably foreseeable is also the critical question concerning plaintiff's negligence counts. To state a cause of action in negligence, the allegations of the complaint must establish the existence of a duty owed by the defendants to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Durr v. Stille* (1985), 139 Ill. App. 3d 226, 487 N.E.2d 382.) The existence of a duty, the breach of which could have been a proximate cause of plaintiff's claimed damages, first must be determined by the court as a matter of law. *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502.

In determining whether a duty exists, a court must apply a foreseeability test. That test makes defendant liable for any injury which is objectively reasonable to occur; however, it does not make defendant liable for anything which conceivably might occur. (*Watkins v. Mt. Carmel Public Utility Co.* (1988), 165 Ill. App. 3d 493, 519 N.E.2d 10, *appeal denied* (1988), 119 Ill. 2d 576, 522 N.E.2d 1258.) Under these pleadings, Lake's unfortunate death indeed is something which might conceivably occur. But, under the pleadings, it is not something objectively reasonable to occur. As a matter of law, under the circumstances pled, Addison and Heat Controllers had no duty to Lake; therefore, I believe that the circuit court was correct in dismissing counts V and VI of plaintiff's second amended complaint.

The circuit court dismissed counts IX and X, which sought recovery upon strict products liability, on grounds that defendants owed no duty to Lake. Plaintiff complains that the dismissal was erroneous because strict liability in tort is based on the condition of the product, not the conduct of the defendant. Therefore, duty analysis has no place in strict liability theory. Plaintiff is correct. *Stanfield v. Metalist Industries, Inc.* (1975), 34 Ill. App. 3d 635, 340 N.E.2d 276.

Nevertheless, under the facts pled, the failure to blow cold air does not make an air conditioner unreasonably dangerous.

To state a cause of action in a strict products liability situation, plaintiff must allege: (1) that defendant placed a defective product into the stream of commerce; (2) that the defect made the product unreasonably dangerous; (3) that defect existed at the time the product left the manufacturer's control; and (4) that the defect was a proximate cause of the injury. *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.

The majority correctly relies upon the "consumer expectation" test of strict products liability. Under that test, a defective condition of a product will only be considered unreasonably dangerous when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." (*Riordan v. International Armament Corp.* (1985), 132 Ill. App. 3d 642, 650, 477 N.E.2d 1293, citing Restatement (Second) of Torts §402A, comment *i*, at 352-53 (1965).) The majority, however, misinterprets the test.

The majority correctly points out that Arvo Lake did not expect to be killed by his air conditioner. For that matter, neither did the manufacturer. However, whether Arvo Lake expected to be killed by his air conditioner is not the test. Rather, the test is whether Arvo Lake would expect to be killed (and this is where the majority errs)

by his air conditioner given its intended function, namely that it provide cool comfort, not that it keep him alive. Considering the type of injury Lake sustained and considering the air conditioner's intended function, this air conditioner was not unreasonably dangerous.

A manufacturer is not under a duty in strict liability to design a product which is totally incapable of injuring those who use it. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) The duty of a manufacturer is to make a product reasonably fit for its intended use. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.) The Illinois Supreme Court has noted that the concept of an unreasonably dangerous condition or defect is elusive. In *Dunham v. Vaughn & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401, the court recounted a litany of authorities which attempted to define the scope of the concept. It concluded that each authority had a common premise: "those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected *in light of their nature and intended function.*" (Emphasis added.) (*Dunham*, 42 Ill. 2d at 342, 247 N.E.2d at 403.) Though the language of the Restatement and the language from *Dunham* are different, and may appear to have different meanings, their meanings are, in fact, identical.

Another way of formulating this concept is to say that every time a product injures a consumer, that consumer is disappointed, *i.e.*, the product has failed to live up to the consumer's expectations, but that does not automatically impose liability upon the manufacturer. Though strict liability is focused on the product rather than the conduct of the consumer, elements of reasonableness are not factored out. Foreseeability factors reasonableness into the equation in this fashion: A consumer's expectation must be reasonable; otherwise, consumer disappointment is unforeseeable.

The majority also ignores the phrase "as to its characteristics" found in the Restatement's comment *i* and fails to recognize that it means the same as "in light of their nature and intended function." The manufacturer of the air conditioner did not intend for its product to be a life-support device. The question in this case is whether an air conditioner which fails to blow cold air is dangerous to an extent beyond that which would be contemplated by Lake, granting to him, as we must here, the ordinary knowledge common to the community as to the characteristics of hot air and a failed air conditioner. An ordinary consumer, in my estimation, would not expect to be killed by an air conditioner which is defective in that it leaked itself dry of Freon, failed to cool, and blew hot air. An air conditioner

may indeed on occasion serve to prevent people from overheating and dying, but this purpose is incidental to their *intended* use. (See *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 563 N.E.2d 449.) Without pleading special circumstances which set forth an intended purpose other than what is ordinarily expected of the product, plaintiff has not pled a cause of action. *Cf. Williams v. RCA Corp.* (1978), 59 Ill. App. 3d 229, 376 N.E.2d 37; *Hollenbeck v. Selectone Corp.* (1985), 131 Ill. App. 3d 969, 476 N.E.2d 746.

Therefore, I respectfully dissent, and would affirm the circuit court.