**ARCOR, INC., Plaintiff–Appellee,**

**v.**

**TEXTRON, INC. and Bridgeport Machines, Inc., Defendants– Appellants.**

**No. 91–1324.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1991.

Decided April 6, 1992.

Ellen M. Babbitt, Henry C. Krasnow, Mary A. Martin (argued), Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, Ill., for Arcor, Inc.

Stephen L. Tyma, Fishman & Merrick, Aaron E. Hoffman (argued), Schwartz & Freeman, Chicago, Ill., for Textron, Inc. and Bridgeport Machines, Inc.

Before CUMMINGS and CUDAHY, Circuit Judges, and WISDOM, Senior Circuit Judge.*

CUDAHY, Circuit Judge.

Arcor, Inc. (Arcor), is engaged in the business of metal perforation. In May of 1986, Arcor bought from Bridgeport Machines, Inc. (Bridgeport), then a subsidiary of Textron, Inc. (Textron), a Japax Model SDX10NC small-hole-drilling electrical discharge machine (Japax machine). Two years and approximately 30 service calls later, Arcor sued Bridgeport and Textron for breach of warranty, alleging that the machine did not work properly and failed to meet certain contract specifications as set out in Arcor's purchase order. The case was tried before a jury, which returned a verdict for Arcor in the amount of $200,-000. The district court entered judgment on the verdict and denied defendants' motion for a judgment notwithstanding the verdict or a new trial.

On appeal, defendants advance four errors that they claim warrant a reversal of the jury verdict: (1) the jury's verdict was the product of prejudicially improper evidence and argument concerning damages; (2) Arcor failed to prove that the machine's failure to perform as specified in the contract was due to a defect in the machine, rather than to Arcor's misuse; (3) Arcor's claims that the machine failed to conform

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

to the contract's requirements as to hole-diameter accuracy were barred as a matter of law by Arcor's failure to give timely notice of breach under section 2–607(3) of the Illinois Uniform Commercial Code, Ill. Rev.Stat. ch. 26; and (4) the court improperly invaded the province of the jury by preventing the jury from deciding what terms were included in the contract between Arcor and Bridgeport.

## I. DAMAGES

Approximately two and one-half years after purchasing the Japax machine, Arcor replaced it with a larger and significantly more expensive Elox brand electrical discharge machine (Elox machine). Early in the trial the district court ruled that Arcor was not entitled to recover the cost of the Elox machine as "cover" under section 2–712(1) of the Illinois Uniform Commercial Code, because Arcor had never revoked its acceptance of the Japax machine.[1] In a later, written opinion the court also held that the cost of the Elox machine was "not available" as a measure of the difference in value between the Japax machine "as delivered" and the Japax machine "as promised," the standard measure of damages for breach of warranty.[2]

Nevertheless, during closing argument Arcor's counsel twice asked for damages of "over $490,000," an amount that included the cost of the Elox machine. Counsel also placed before the jury a chart that included the cost of the Elox machine as an element of damages. The defendants objected to the use of the chart, and Arcor's counsel agreed to take it down. The defendants then requested that the court instruct the jury that the Elox figure "was not material to the damage calculations." Tr. at 1439. The judge did not respond directly to the defendants' request, but instead overruled the defendants' objection.

During the court's instructions to the jury defendants renewed their request that the jury be instructed "not to consider the price of the Elox matching [sic] in their deliberations." Tr. at 1498. The court acknowledged that defense counsel had a "good point," but concluded that a curative instruction was not necessary "because there was no evidence for the jury to consider. You have just the reference to which you objected at the time." *Id.* Defendants argue that the court committed reversible error by refusing to give a curative instruction regarding the price of the Elox machine in response to Arcor's improper argument.

■ "It is within the trial court's discretion to determine whether counsel's remarks require admonition to the jury, and that discretion will only be upset for clear abuse." *Canada Dry Corp. v. Nehi Beverage Co.*, 723 F.2d 512, 527 (7th Cir.1983). In this case, there were only two explicit references to the Elox machine during Arcor's closing argument. One of these, as we have noted, was the Elox machine's inclusion on Arcor's damages chart. Defendants make much of the district court's denial of their objection to that chart. It is important to note, however, that at the time the court ruled on that objection it had become moot because Arcor's counsel had agreed to take the chart down as soon as the objection was made. The court *sustained* defendants' objection to the only other mention of the Elox machine during Arcor's closing and expressed agreement with the defendants' statement that the Elox machine was not relevant to the calculation of damages. Finally, defendants neither objected to Arcor's requests for "over $490,000," nor requested a curative instruction that this amount was more than that to which Arcor was entitled. Under these circumstances, we do not believe that the court abused its discretion in declining to

1. Section 2–711 provides:
 Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, ... the buyer may cancel and ... may in addition to recovering so much of the price as has been paid (1) "cover" and have damages under the next section as to all the goods affected.... Ill.Rev.Stat. ch. 26, § 2–711 (1989).

2. Ill.Rev.Stat. ch. 26, § 2–714(2) (1989).

give a curative instruction regarding the price of the Elox machine.

■ Moreover, the improper arguments of Arcor's counsel do not rise to the level of reversible error. Improper statements during closing arguments warrant reversal only if they "influenced the jury in such a way that substantial prejudice resulted to" the opposing party. *Fenolio v. Smith*, 802 F.2d 256, 258 (7th Cir.1986). The remarks of Arcor's counsel regarding the Elox machine did not result in substantial prejudice to the defendants because the evidence of damage claims that *were* properly submitted to the jury fully supported the jury's award of $200,000.

■ "Because a damage award is an exercise in fact-finding, only those awards that are 'monstrously excessive,' born of passion and prejudice, or not rationally connected to the evidence may be altered." *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1554 (7th Cir.1990). Although the defendants allege error as to several of Arcor's damage claims, the award of $200,-000 was rationally connected to the evidence of those claims that were properly submitted to the jury. First, the damage claims which the defendants do not challenge on appeal total $104,707.41.[3] In addition, the defendants' challenge to Arcor's claim for $12,894.17 in profits lost on jobs consists only of a bald statement that the claim was improper, with no argument to support it. Another $68,294.91 of Arcor's claimed damages consists of various costs incurred by Arcor in attempting to produce usable products for its customers. The defendants argue that these costs were at least in part "reasonably avoidable," and therefore not recoverable under section 2–715(2)(a) of the Illinois Uniform Commercial Code.[4] The jury was entitled to conclude, however, that these costs resulted from reasonable efforts by Arcor to mitigate its damages by attempting to perform on its contracts. *See Burrus v. Itek Corp.*, 46 Ill.App.3d 350, 4 Ill.Dec. 793, 798, 360 N.E.2d 1168, 1173 (1977) (upholding award of consequential damages to plaintiff who continued to use defective machine "in an effort to maintain his business").

■ The jury was also entitled, contrary to defendants' argument, to consider the cost of the Japax machine in its damages calculation. Arcor offered evidence that the "current" value of the machine was between $5,000 and $10,000. The jury could reasonably have concluded that the cost of the Japax represented its value as warranted, and its current value represented its value as delivered to Arcor. *See Gray v. Davis*, 45 Ill.App.3d 55, 3 Ill.Dec. 662, 358 N.E.2d 1347 (1977) (upholding jury award based on difference between purchase price and estimated value two years after delivery). Thus, the jury could reasonably have awarded another $46,000 to $51,000 (value as warranted minus value as delivered) to Arcor as standard warranty damages.

---

**3.** This total includes the following items:

| | |
|---|---:|
| Excess manufacturing/press hours (Pl.Ex. 32) | $27,130.00 |
| Other expenses (Pl.Ex. 33) | 2,522.44 |
| Wages paid to Japax operators (Pl.Ex. 35) | 54,570.97 |
| Subcontracted die work (Pl.Ex. 36) | 20,584.00 |

Defendants assert in their reply brief that they do not concede the legal sufficiency of two of these claims—the excess manufacturing/press hours and the subcontracted die work. Reply Br. at 11. However, we need not consider arguments not raised in the main brief. "An appellant's argument is to be made in its *opening*, not its reply, brief." *Real Estate Data, Inc. v. Sidwell Co.*, 809 F.2d 366, 376 n. 12 (7th Cir.1987) (emphasis original). In any event, the defen-

dants' discussion of these claims in their reply brief in no way constitutes an *argument* that would support reversal; defendants simply note, in response to Arcor's brief, that they did not waive any challenge to these claims by failure to object at trial. But they do not offer any such challenge here; that is, they do not explain why this Court should conclude that these claims were improperly submitted to the jury.

**4.** Section 2–715 provides:

(2) Consequential damages resulting from the seller's breach include:

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;....

Ill.Rev.Stat. ch. 26, § 2–715 (1989).

■ The damages items discussed thus far total $231,896.49. Even after subtracting from this amount the profits Arcor earned from jobs run on the Japax machine ($17,912.31), the evidence as to these claims is sufficient to support the jury's award. In addition, the jury could reasonably have awarded Arcor $100,479.00 for profits lost on jobs not obtained. The defendants argue that these damages were improperly submitted to the jury because the evidence presented in support of those claims was "too speculative." Br. at 34. Arcor's president, Gil Johnson, testified at trial about a number of jobs that Arcor would have received from its pre-existing customers if the Japax machine could have performed as promised. Johnson testified that his knowledge about these jobs was based on information provided by the customers themselves. The defendants argue that such hearsay testimony cannot be an adequate basis for an award of damages. In support of this proposition the defendants cite *Alguire v. Walker*, 154 Ill.App.3d 438, 107 Ill.Dec. 279, 506 N.E.2d 1334 (1987). That case does not, however, hold that hearsay testimony cannot be an adequate basis for a damages award. Rather, the *Alguire* court simply held that certain testimony as to damages, to which the defendants had objected on hearsay grounds at trial, should never have been *admitted*. Because there was no other evidence to support the damages in question, the award had to be reversed once that evidence was excluded. In the present case, by contrast, the defendants do *not* claim that the evidence in question should not have been admitted—in fact, they explicitly note that the question here is not the admissibility of the evidence but its legal *sufficiency*. Reply Br. at 10–11 and n. 3. They argue not that Johnson's testimony was inadmissible but that it was too speculative to support an award of lost profits. We disagree. Johnson, the president of the company, testified to the actual needs of identifiable customers, most of whom had a pre-existing relationship with Arcor. Under Illinois law, lost profits need not be proven with "absolute certainty," but only to a "reasonable certainty." *Malatesta v.*

*Leichter*, 186 Ill.App.3d 602, 134 Ill.Dec. 422, 437, 542 N.E.2d 768, 783 (1989). The evidence presented by Johnson meets that standard.

## II. CAUSATION

■ The defendants argue that they were entitled to judgment notwithstanding the verdict because Arcor did not prove that the Japax machine's failure to perform according to the contract specifications was caused by a defect in the machine rather than by Arcor's misuse. In a diversity case, state law provides the standard of review for denial of a motion for JNOV. *Ft. Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1382 (7th Cir. 1990). Under Illinois law, "the proper standard requires us to ask whether all the evidence, viewed in a light most favorable to the opponent [of the motion], so overwhelmingly favors the movant, that no contrary verdict could ever stand." *Hollembaek v. Dominick's Finer Foods, Inc.*, 137 Ill.App.3d 773, 92 Ill.Dec. 382, 387, 484 N.E.2d 1237, 1243 (1985). The evidence as to causation in this case does not overwhelmingly favor the defendants. Arcor introduced the deposition testimony of Richard Rieck, defendants' former district sales manager, in which Rieck stated that the Japax machine was incapable of meeting the contract specifications. Specifically, Rieck testified that the Japax machine could not meet the absolute position, repeatability and hole-diameter specifications in Arcor's purchase order. Although the defendants argue that Rieck's deposition testimony cannot support the verdict because it was "overwhelmed" by his live testimony at trial, the jury clearly was entitled to credit Rieck's initial, deposition testimony rather than his "clarified" trial testimony. Arcor also introduced correspondence between the defendants and Japax (the manufacturer) in which the defendants complained about the "serious design deficiencies" of the Japax machine (Supp.App. Ex. 4) and specifically blamed Arcor's problems on the poor design of the machine. The defendants' attempt to minimize the significance of this evidence by characteriz-

ing their statements as "rhetoric" is unavailing; the jury was not required to accept that characterization. The district court did not err in denying the defendants' motion for JNOV.

### III. NOTICE OF BREACH

Section 2–607(3)(a) of the Illinois Uniform Commercial Code requires the buyer of goods to give the seller notice of a breach of implied warranty "within a reasonable time after he discovers or should have discovered the breach." Ill.Rev.Stat. ch. 26, § 2–607(3)(a) (1989). The defendants argue that Arcor failed to fulfill this requirement as to the machine's inability to meet the contract specifications for hole-diameter accuracy. The defendants informed Arcor that the machine would not be able to meet Arcor's hole-diameter specification approximately two months after the machine was installed, but Arcor never notified the defendants that it considered this problem to constitute a breach of the implied warranty. The defendants argue that they were therefore entitled to a directed verdict as to Arcor's hole-diameter claims.

 Under Illinois law, the buyer is not required to notify the seller that the buyer considers the deficiencies of a product to constitute a "breach" in order to fulfill its obligation under section 2–607(3)(a). "[N]otification need merely be sufficient to let the seller know that the transaction is still troublesome. There is no need to state all objections the buyer has or for the buyer to say he is holding the seller liable and threaten litigation." *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill.App.3d 1068, 67 Ill.Dec. 727, 734, 445 N.E.2d 19, 26 (1982). Further, the buyer is deemed to have met the notice requirement when the seller has actual knowledge of the product's failure based on the seller's own observations. *Malawy v. Richards Manufacturing Co.*, 150 Ill. App.3d 549, 103 Ill.Dec. 355, 363, 501 N.E.2d 376, 384 (1986) ("When a seller's employee actually observes the failure of a product, this constitutes notice to the seller."); *Crest Container*, 67 Ill.Dec. at 734, 445 N.E.2d at 26. In this case, the defen-

dants clearly had actual knowledge that the Japax machine had failed to conform to one of Arcor's requirements as specified in Arcor's purchase order. The district court did not err in denying the defendants' motion for a directed verdict on this issue.

Further, the defendants' argument would not justify reversing the jury's verdict even if we were to accept it, because the defendants have not shown which, if any, of Arcor's claims were based on the Japax machine's failure to conform to the hole-diameter requirements of the contract. Indeed, the defendants argued in their motion for JNOV that Arcor's "actual evidence related to problems with positioning," not hole diameter. Therefore, even if the defendants were correct that any claim based on hole-diameter problems is barred, the defendants have not shown that there is any such claim.

### IV. DETERMINATION OF CONTRACT TERMS

 The district court found that the contract between Arcor and Bridgeport for the sale of the Japax machine was formed by Arcor's purchase order (the offer) and a March 3, 1986 letter from the McWilliams division of Bridgeport to Arcor (the acceptance). The court also found that these written documents were intended by the parties to be the final, but not exclusive, expression of their agreement. Therefore, the court concluded that evidence of consistent additional terms was proper. Accordingly, the court instructed the jury that the terms of a March 6, 1986 letter from McWilliams to Arcor could "be considered as evidence of additional terms of the contract," but "only if you conclude that it is evidence of consistent additional terms the parties agreed upon when they formed their March 3, 1986 contract." Tr. at 1501. The defendants argue that the district court thus usurped the jury's role of deciding what terms comprised the contract. We find this argument to be without merit.

The defendants note that "[w]ith respect to the question of what terms may or may not be part of the contract, the U.C.C. limits the trial court's role to determining

whether the writing(s) at issue were intended by the parties to be 'a complete and exclusive statement of the terms of the agreement.'" Br. at 47, quoting Ill.Rev. Stat. ch. 26, § 2–202(b) (1989). The defendants argue that the district court exceeded this role by unduly limiting the circumstances under which the terms of the March 6 letter could be considered part of the contract. The defendants claim that, under the Illinois Uniform Commercial Code, "[a] contract may, in most circumstances 'be explained or supplemented ... (b) by evidence of consistent additional terms.'" Br. at 48, citing Ill.Rev.Stat. ch. 26, § 2–202(b) (1989). Thus, because the terms of the March 6 letter are neither inconsistent with nor contradictory to the written documents, the jury should have been permitted to find that those terms "supplement[ed] any prior agreement" even if they had not been agreed to by March 3.

The defendants seriously misstate the law. The Illinois Uniform Commercial Code does not provide that a *contract* may be explained or supplemented by evidence of additional terms. Rather, section 2–202 reads, in pertinent part:

> *Terms* with respect to which the confirmatory memoranda of the parties agree or which are otherwise *set forth in a writing* intended by the parties as a final expression of their agreement with respect to such terms as are included therein ... *may be explained or supplemented* ... (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Ill.Rev.Stat. ch. 26, § 2–202 (1989) (emphasis added). In other words, it is the *writing,* not the agreement itself, that may be supplemented by evidence of consistent additional terms. This distinction is crucial. If one accepts the court's conclusion that a contract between the parties was indeed formed on March 3 (and the defendants do not really dispute it), then under section 2–202 the March 6 letter can only be either evidence of terms to which the parties had already agreed but which were not included

in the written documents that formed the contract, or an attempt to modify that agreement. The district court's determination that the contract was formed on March 3 explicitly left it open to the jury to decide which characterization was correct.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.