33 F.3d 56
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
BOARD OF TRUSTEES, VILLAGE OF BOLINGBROOK POLICE PENSION
FUND, Plaintiff-Appellant,
v.
909 CORPORATION, f/k/a Underwood, Neuhaus & Company,
Incorporated, a Texas Corporation, James Willhite,
Richard Pierson, and Robert Kolodziej,
Defendants-Appellees.
 Nos. 93-2280, 93-2864.
 United States Court of Appeals, Seventh Circuit.
 Argued April 6, 1994.
Decided Aug. 24, 1994.
 
 1
 Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.*
 
 ORDER
 
 2
 Believing that its brokers had acted together with its manager to make unsuitable investments, churn its account and make unauthorized investments, the Board of Trustees of the Village of Bolingbrook Police Pension Fund sued Robert Kolodziej, the Board's manager, financial director and treasurer; 909 Corporation, the board's brokerage firm; and 909 Corporation brokers Richard Pierson and James Willhite. The board alleged that defendants had violated Sec. 10b-5 of the Securities and Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), Securities and Exchange Commission Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 and their obligations as fiduciaries under Illinois law. After a six week trial, the jury found for defendants. The board filed motions for a new trial, for judgment as matter of law, and for leave to contact jurors. The magistrate judge who had presided over the trial denied the motions and the board appeals. Jurisdiction over the appeal is present. 28 U.S.C. Sec. 636(c)(3). We affirm the rulings of the magistrate judge.
 
 A. Motion for New Trial
 
 3
 In its motion for new trial, the board argued that the jury instructions were flawed, the closing arguments of 909 Corporation were prejudicial, defendant Kolodziej had improper contact with a juror and the magistrate judge had erred in refusing to allow the board to amend its complaint.
 
 1. Jury instructions
 
 4
 a. delegation instruction
 
 
 5
 One of the central issues at trial was the extent to which the board had delegated the authority to make investment decisions for the pension fund to its manager, defendant Kolodziej. If the board had delegated that authority, then it could not prevail on a Rule 10b-5 claim based on improprieties surrounding Kolodziej's trading decisions. If Kolodziej had been delegated to act as the board's agent, any obligations he breached in making trades would not be "in connection with" the sale of a security within the meaning of 10b-5. That proposition was established in O'Brien v. Continental Illinois National Bank & Trust Co., 593 F.2d 54, 61 (7th Cir.1979), when this court refused to extend the implied cause of action under 10b-5 to a "claim made by persons who have deliberately chosen to delegate the power to make investment decisions that the recipient of the power has misused it." In such a circumstance, the nondisclosure of useful information is not linked to the purchase or sale of securities; rather, it relates to the principal's decision to continue the agency relationship. See also Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co., 800 F.2d 177 (7th Cir.1986).
 
 
 6
 The board concedes that it cannot recover under Rule 10b-5 for Kolodziej's wrongdoing if it had delegated its investment authority to him, but it contends that the court's instructions were flawed because they failed to provide for two possibilities: that even if the board had delegated its authority, Kolodziej was defrauded by Pierson and Willhite or alternatively, that the board had not delegated its authority to Kolodziej but instead, had retained veto power over all of his investment decisions.
 
 
 7
 The court gave the following instruction on the third element of a Rule 10b-5 violation:
 
 
 8
 [t]he third element of the [board's] claim under Rule 10b-5 is the requirement of proof that the Plaintiff "relied" upon the alleged misrepresentations or omissions and that it was "justified" in doing so. If the Plaintiff did not make a decision to purchase or sell a security, but, instead delegated the authority to make the decision to Kolodziej, then there can be no recovery.
 
 
 9
 (Emphasis added). The board points out correctly that this court recognized in O'Brien, 593 F.2d at 63, that fraud against the agent by a broker gives either the agent or his principal the right to maintain a 10b-5 action against the broker. In the circumstance in which the broker defrauds the agent, the fraud is "in connection with" the sale of a security and the principal should be able to vindicate the wrong done to it through its agent.
 
 
 10
 The board's theory is a viable one. Unfortunately for it, it failed to raise an objection to the court's instruction or propose an instruction incorporating this alternative theory when it had the opportunity to do so. These failures bar it from challenging this aspect of the instructions on appeal. Fed.R.Civ.P. 51; Gordon v. Degelmann, No. 93-3463, slip op. at 3-4 (7th Cir. July 12, 1994); Hebron v. Touhy, 18 F.3d 421, 424 (7th Cir.1994); Bogan v. Stroud, 958 F.2d 180, 183 (7th Cir.1992). Indeed, it is questionable whether the board recognized during the trial the theory it now espouses. The only record evidence that plaintiff's counsel even thought about a fraud on the agent theory comes from two brief comments made during the instruction conference to plaintiff's counsel by his assistant and a possible reference to the theory in plaintiff's trial brief, without any citations to either O'Brien or Congregation of the Passion.
 
 
 11
 Even if the board had made its objection known to the court, it is doubtful the court would have changed the jury instructions. The trial had proceeded for six weeks on the theory that Kolodziej worked with the brokers to accomplish their scheme. The board did not pursue the theory that Kolodziej himself was defrauded. The magistrate judge was not required to instruct the jury on theories that were not supported by the evidence or presented at trial. See Rogers v. ACF Industries, Inc., 774 F.2d 814, 818 (7th Cir.1985). In hindsight, the board argues that there was evidence that the brokers failed to disclose to Kolodziej the extent of their mark-ups on transactions and that, to this extent, there was evidence of a fraud on its agent. Despite the fact that Kolodziej testified that he had no interest in the size of the mark-ups, the board contends that the brokers had an absolute obligation to disclose all excessive mark-ups to Kolodziej and their failure to carry out this obligation states a 10b-5 violation even without any evidence of reliance by Kolodziej. Again, because the board did not request an instruction on this theory or raise an objection to the giving of the general delegation instruction without excluding the mark-up theory, it has waived its right to argue this theory on appeal.
 
 
 12
 The board challenges the delegation instruction for another reason. It contends that this instruction precluded the jury from finding that the board retained veto power to approve or reject transactions, in which case it could recover for any wrongdoing by the brokers. Norris v. Wirtz, 719 F.2d 256 (7th Cir.1983), cert. denied, 466 U.S. 929 (1984). The board did raise this objection at the instruction conference, but the magistrate judge rejected it on the ground that the instruction as given permitted the board to argue to the jury that the board had retained the power to approve and disapprove transactions after the fact and therefore, had not delegated to Kolodziej its authority to purchase and sell securities. This ruling by the magistrate judge does not warrant a new trial. Although the instruction was not as explicit as it might have been, it was not misleading.
 
 
 13
 In a third challenge to the delegation instruction, the board contends that giving the delegation instructions confused the jury about the board's state law claims of breach of fiduciary duty. Ironically, the board's argument on this issue is as confusing as it contends the instruction was. Apparently, the board is arguing that the magistrate judge should have included a limiting phrase in the instruction. The board asserts that it was inappropriate to use the language "[i]f the Plaintiff did not make a decision to purchase or sell a security, but instead delegated the authority to make the decision to Kolodziej, then there can be no recovery" without including the phrase, "for a 10b-5 violation" after "there can be no recovery." The board seems to be saying that this omission in the 10b-5 instructions would have misled the jury at a later point in its deliberations when it considered the state law claim. This contention is unpersuasive. Although the state law fiduciary duty claims concerned the same conduct for which the board claimed a 10b-5 violation, each claim had its own set of instructions and separate verdict form, making confusion unlikely.
 
 
 14
 Finally, the board asserts that the fiduciary duty instruction was flawed because it did not define "customer" properly. However, the board has failed to show that it raised this issue or objected to the alleged shortcoming in the instruction. The claim is waived under Rule 51.
 
 
 15
 b. unauthorized trading instructions
 
 
 16
 Challenging the instructions relating to unauthorized trading, the board contends that the magistrate judge gave an instruction on apparent authority that precluded the jury from finding Kolodziej liable for unauthorized trading, that he gave an inaccurate explanation of the meaning of apparent authority, and that he misstated the law on ratification.
 
 
 17
 In relevant part the instruction at issue provided:
 
 
 18
 As part of its claim under Rule 10(b)(5), Plaintiff alleges that the Defendants executed unauthorized trades with its assets, and failed to inform the plaintiff about the trades. The Broker-Defendants contend that they acted upon the instructions of Kolodziej, who was authorized to conduct the trades. If Kolodziej had actual, implied or apparent authority to conduct the trades, there was no unauthorized trading. The Defendants have the burden of proving such authority.
 
 
 19
 "Actual authority" is authority expressly conferred to an agent.
 
 
 20
 "Implied authority" is the authority to do those things which are necessary to carry out a grant of actual authority.
 
 
 21
 "Apparent authority" occurs when a principal intentionally permits an agent to deal in a manner that reasonably leads third persons who deal with the agent to conclude that the agent is authorized to bind the principal, provided that the third persons reasonably relied thereon.
 
 
 22
 The board contends that the court erred in making the reference to "defendants" in the first sentence of the instruction instead of the original reference to "broker-defendants" because this allowed the jury to exonerate Kolodziej from the charge of unauthorized trading if it found that he possessed apparent authority. The board argues that apparent authority is a doctrine that relates only to a third party's perception of an agent's authority and not to the actual relationship between the agent and his principal. Whatever the merit of the board's argument, it was waived because it was not articulated clearly before the magistrate judge.
 
 
 23
 The record reveals some discussion about replacing the term "broker-defendants" in the first sentence with "defendants." Initially, the magistrate judge decided not to make the change, but changed his mind after some additional discussion. The board's counsel did not object but moved on to another issue. Considering the totality of the circumstances, we conclude that the board's objection was insufficient to satisfy Rule 51. Although the board's counsel suggested at first that the instruction was confusing, he did not voice an objection to the magistrate judge's final decision and did not alert the magistrate judge to an alleged infirmity in the instruction.
 
 
 24
 In a second objection to this same instruction, the board contends that the instruction is not an accurate reflection of Illinois law because it did not include the information that apparent authority requires an intentional holding out with intent to deceive. This contention is without merit. See Wasleff v. Dever, 194 Ill.App.3d 147, 157, 550 N.E.2d 1132, 1138 (1st Dist.) (apparent authority exists where principal creates reasonable impression that agent has been granted authority to perform certain acts; extent of agent's authority may be shown by ascertaining what reasonably prudent person exercising diligence and discretion in dealing with agent might believe agent to possess on the basis of the principal's conduct), appeal denied, 132 Ill.2d 555, 555 N.E.2d 22 (1990).
 
 
 25
 c. ratification instruction
 
 
 26
 According to the board, this instruction is inaccurate because it did not inform the jury that a ratification is ineffective if the ratifier does not have knowledge of all of the material facts concerning the transaction. The magistrate judge rejected the board's argument when it was raised in the board's motion for new trial. He concluded that 1) the board waived any objection it had on this issue by not raising it in a timely fashion and 2) a general instruction on ratification was given that contains the language the board contends should have been included. The jury was instructed that:
 
 
 27
 "Ratification" means that Plaintiff, with full knowledge of the material facts and circumstances, actually approved the securities transaction after the fact, or did something to communicate to a Defendant by words or conduct that the Plaintiff accepted and approved the securities transaction.
 
 
 28
 This instruction eliminated any concern that the jury did not understand that ratification was possible only if the board had knowledge of all material facts. The board's objection to this instruction appears to be that the jury could have been misled because the instruction was not given with the ratification instruction relating to unauthorized trading but was part of a general instruction on ratification. Contrary to the board's assertion, the general ratification instruction served to clarify rather than confuse the concepts of ratification presented in the unauthorized trading instructions.
 
 
 29
 Jury instructions are reviewed as a whole rather than in piecemeal fashion. Heller International Corp. v. Sharp, 974 F.2d 850, 856 (7th Cir.1992). There is no basis on which to conclude that the instructions regarding ratification misled the jury.
 
 2. Comments by opposing counsel
 
 30
 During closing arguments, counsel for 909 Corporation made several comments concerning the board's counsel that the board contends were improper and so prejudicial as to require a new trial. Such a contention is subject to review under an abuse of discretion standard. We will reverse only if the remarks resulted in substantial prejudice. Arcor, Inc. v. Textron, Inc., 960 F.2d 710, 712-13 (7th Cir.1992).
 
 
 31
 909 Corporation's counsel remarked that the lawsuit "really all starts" with the payment of a retainer to the board's counsel and that this payment
 
 
 32
 suggests the real motivation for making this case go on for the length it has and the manner it has. Because if you want to talk about churning, if you want to talk about something that is beneficial....
 
 
 33
 The board's counsel objected at this point, but the objection was overruled on the grounds that "jury has heard the evidence and can rely on their own recollection." 909 Corporation's counsel went on to suggest that the board's counsel and his law firm were the only ones "who stand[] to benefit from all the activity in the case." Additionally, he suggested to the jury that the board's case was based on "myth" and the board's counsel was "the last person to testify and the one to testify the longest and the loudest" and that "he goes on and on, as [he] tries to come up with fabrications in order to try to make a case before the jury."
 
 
 34
 The board's counsel raised another objection to these comments outside the presence of the jury, after closing arguments had been concluded. The magistrate judge reviewed the record and decided to give an admonitory instruction concerning counsel's interest in the outcome of the case. The board's counsel responded, "Thank you, your honor, I will accept that." The magistrate judge instructed the jury:
 
 
 35
 the jury is instructed that there has been no evidence that any attorney stands to gain by the outcome of this case, and any argument or inference to the contrary should be disregarded by you.
 
 
 36
 The next day, the board's attorney raised new objections to the remarks. The magistrate judge responded by stating that the admonition he had given was sufficient to alleviate the board's concerns.
 
 
 37
 At oral argument before this court, the board's counsel suggested that although the admonitory instruction may have cured any possible prejudice caused by the suggestion that he or his firm would benefit from the case, the instruction did not resolve the comments aimed at him personally. Lawyers are given wide latitude in the nature of their remarks in closing arguments, but that latitude does not extend to personal attacks upon opposing counsel. However frustrated defense counsel were with the length of trial and the unfocused nature of the case, it was inappropriate to resort to remarks of the kind at issue here. However, we believe that the trial judge is in the best position to evaluate the nature and effect of comments made at trial and to determine the best remedy under the circumstances. The magistrate judge gave a curative instruction in response to the board's objections. The record does not reveal that the instruction was not adequate to cure the problem.
 
 3. Kolodziej's contact with a juror
 
 38
 The board contends that it is entitled to a new trial because of a brief exchange that occurred between Kolodziej and a juror, the substance of which conversation was described by Kolodziej in an in camera proceeding as follows:
 
 
 39
 A juror turned to me and asked me, she says, aren't you getting tired, I says I will never complain about a church pew again.
 
 
 40
 The magistrate judge admonished both Kolodziej and the jury to refrain from future contact. A trial judge's assessment of the effect of an improper communication with a juror will be overturned only on a showing that the trial judge abused his discretion. Haugh v. Jones & Laughlin Steel Corp., 949 F.2d 914, 916-17 (7th Cir.1991). Nothing in the record suggests that the magistrate judge mishandled this situation or that this brief exchange between Kolodziej and the juror relating solely to the courtroom accommodations had any effect on the outcome of this case.
 
 4. Refusal to allow amended complaint
 
 41
 After five weeks of trial, near the close of its case, the board moved to amend its complaint to add claims under the Illinois Deceptive Trade Practices Act, common law fraud and negligence. The magistrate judge denied the motion. A trial court has broad discretion to allow amendments to the pleadings "when justice requires." Fed.R.Civ.P. 15. Its judgment on amendment will be reversed only for an abuse of discretion. Talbot v. Robert Matthews Distributing Co., 961 F.2d 654, 665 (7th Cir.1992). The magistrate judge considered the following factors in denying the motion to amend: 1) it would be unfair to defendants to introduce new theories of liability so late in the proceedings after the defendants had chosen a trial strategy; 2) the jurors might be confused by new theories being introduced so late in the case; and 3) the extensive time provided the board to conduct discovery and to prepare for trial eliminated any excuse the board might have for its failure to present all of its theories of liability earlier. It is well within the discretion of the trial court to deny leave to amend a complaint for fear of causing prejudice to a party or potentially confusing the jury. Feldman v. Allegheny International, Inc., 850 F.2d 1217, 1225 (7th Cir.1988). The magistrate judge's refusal to allow the amendment was not an abuse of discretion.
 
 B. Judgment As Matter of Law
 
 42
 The board contends that the evidence demonstrates that it was entitled to a judgment as matter of law both on its unauthorized trading claims against Kolodziej because it never delegated to Kolodziej the authority to act as an "investment manager" under the Illinois Pension Code, 40 ILCS 5/1-101.1(c), and on its unsuitability claim because investment in GNMA's was not authorized by 40 ILCS 5/3-135. We need not reach the merits of the board's contention because the board does not even attempt to refute defendant Kolodziej's contention that it never argued the applicability of these statutes at trial.
 
 C. Leave to Contact Jurors
 
 43
 The magistrate judge refused two requests by the board to talk to the jury panel after the trial had concluded. A court's decision on such requests stands unless the objector can show the court abused its discretion. Delvaux v. Ford Motor Co., 764 F.2d 469, 472 (7th Cir.1985). In this instance, the board's attorneys based their request on their desire to understand the reasons for the jury's verdict. (Later, they raised the possibilities of improprieties concerning the one juror's comments to Kolodziej during trial.) The magistrate judge considered the requests and denied them for valid reasons, including the length of time that had passed since the trial, the strong possibility that the jurors would not want such contacts, and the fact that the board had not asked during trial for an opportunity to have the court interview the jurors about the conversation with Kolodziej. No further discussion of the matter is necessary.
 
 
 44
 The decisions of the magistrate judge denying the board's motion for a new trial, for judgment as a matter of law, and for leave to interview jurors are AFFIRMED.
 
 
 
 *
 The Honorable Barbara B. Crabb, Chief Judge for the Western District of Wisconsin, is sitting by designation